Filed 6/8/15  In re D.W. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re D.W. et al., Persons Coming Under the Juvenile Court Law. | B258882 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. DK06632) |
| Plaintiff and Respondent, | |
| v. | |
| L.J., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Philip L. Soto, Judge.  Affirmed.

Nicole Williams, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, Stephen D. Watson, Deputy County Counsel, for Plaintiff and Respondent.

_____

L.J. (Mother) appeals from the juvenile court's jurisdictional order which declared her two daughters dependents of the court under Welfare and Institutions Code section 300.[1] We find Mother's appeal not to be justiciable and affirm the challenged order.

## FACTS

Mother and Michael S. (Father) have a child together, M.S. Mother also has a daughter, D.W., from a prior relationship. M.S. and D.W. lived with Mother while Father lived separately. The family came to the attention of the Los Angeles County Department of Children and Family Services (DCFS) when it received a referral on June 6, 2014, alleging Mother and Father engaged in a physical altercation on March 30, 2014, which resulted in a half-inch laceration on Mother's lip and the nail on her right index finger being torn off. In several interviews with the children's social worker, Mother was reluctant to cooperate with the investigation, refusing to allow the social worker into her home. She denied either of the children were present at the time of the incident, stating 13-year-old D.W. was at a friend's house and 9-month-old M.S. was being cared for by Father's relative. She admitted she called the police on March 30, 2014, but adamantly denied Father hit her. She said she merely wanted the police to escort Father out of the house. She and Father had been drinking and she became upset that day. She yelled and screamed in Father's face and he put his hands up to prevent her from hitting him. She fell and hit the wall, injuring her lip when she bit it.

The police report for the March 30 incident showed Mother reported Father had too many drinks and they argued. Mother told Father to leave and pushed him with both hands. Father became enraged and struck Mother with his right forearm approximately five times on the chest and one time in the face, resulting in a half-inch laceration on the

---

[1] All further section references are to the Welfare and Institutions Code unless otherwise specified.

2

inside of her bottom lip and a broken fingernail. The report indicated neither child was present at the time of the incident.[2]

DCFS received several police reports showing Mother had been a victim of domestic violence by Dashard C. in 2006 and 2007 and Zachary S. in 2012. A 911 call log also revealed two calls to 911 originating from Mother's home phone for "possible suspect for battery" on January 11, 2013, and December 4, 2013, as well as a call for "domestic violence in progress" on March 30, 2014. When questioned about these incidents, Mother denied she suffered a history of domestic violence or that Father hit her that day. There were also reports indicating Mother physically abused D.W. in 2008, but the DCFS case was closed as unfounded and inconclusive.

Father denied there was a physical altercation or that they were drinking alcohol on March 30, 2014. However, he acknowledged they argued and that the police were called. Father also admitted he was arrested for possession of marijuana and is registered as a sex offender due to threats he made as a minor. Father stated his son was previously detained from his mother, but was ultimately reunited. He also disclosed his ex-girlfriend, P.E., called the police after he argued with her and her son's father. He plead no contest and was ordered to take domestic violence classes.

DCFS' investigation revealed Father had a further history of domestic violence. Police reports for Father showed arrests for possession of marijuana in 2004 and 2005, as well as vandalism and criminal threats against an ex-girlfriend in 2008. The Long Beach City Attorney's office confirmed Father used force against his ex-girlfriend P.E. on February 14, 2010. Additionally, Father violated a restraining order issued on behalf of P.W. on December 29, 2010, and May 2, 2011. The Los Angeles Police Department notified DCFS that Father was convicted of intent to rape as a minor and required to register as a sex offender.

---

[2] In a subsequent discussion, however, a detective at the LAPD who did not write the initial report indicated M.S. was present during the incident. He stated the case was sent to the District Attorney, but it was rejected and sent to the City Attorney's office, where it was awaiting a decision.

3

The children's social worker observed M.S. to be well cared for and that both Father and Mother were affectionate towards her. Mother's home was assessed to be neat and organized, containing everything necessary for the girls. In a telephone interview,[3] D.W. confirmed she felt safe with her family, including Father, who is nice to her and her sister. D.W. denied ever seeing Father and Mother argue or fight. D.W.'s paternal grandmother also confirmed Mother was a good parent. M.S. was removed from Father, but remained with Mother.

A section 300 petition was filed on July 30, 2014, alleging Father and Mother have a history of violent altercations. It also alleged Father's other children were dependents of the juvenile court due to Father's violent behavior and he failed to reunify with them. It was alleged Mother failed to protect the children by allowing Father unlimited access to them, thus endangering the children. At the detention hearing, the juvenile court found a prima facie case had been established. As a result, the children were detained from Father with monitored visits and released to Mother with family maintenance services.

Both Father and Mother continued to deny Father hit Mother or that the children witnessed the incident. At the adjudication hearing on September 3, 2014, the parties stipulated Mother would testify, if she were called, that she did not intend to reunify with Father. The children's counsel advised the court that D.W. wanted the petition dismissed. The juvenile court sustained the petition under subdivisions (a) and (b). The allegations for both subdivisions were identical: "On 3/30/14 . . . mother . . . and the mother's male companion . . . have a history of engaging in violent altercations. On 3/30/14, the [] father repeatedly struck the mother's face and chest with the [] father's hands, inflicting a bleeding laceration to the mother's lip and the [] father broke the mother's fingernail. On prior occasions, the [] father broke the mother's window. On 3/30/14, the mother pushed the [] father. The mother failed to protect the children in that the mother allowed the [] father to frequent the children's home and have unlimited

---

**3** During the investigation, D.W. had been in Tennessee, visiting her paternal aunt. When D.W.'s father unexpectedly passed away from a heart attack in June, D.W. returned to San Bernardino to stay with her paternal grandmother.

4

access to the children. [M.S.'s] siblings . . . are prior dependents of the Juvenile Court due to the [] father's violent altercation with the siblings' mother []. The father failed to reunify with the siblings. The father has a criminal history of a conviction of Spousal Battery. Such violent conduct on the part of the [] father and the mother's failure to protect the children endanger the children's physical health and safety and place the children at risk of physical harm, damage, danger and failure to protect."

The juvenile court declared the children dependents of the court and released them to Mother's custody with family maintenance services. Mother timely appealed the orders.

## DISCUSSION

Mother contends there is insufficient evidence to sustain the petition because there was no evidence the children ever suffered serious physical harm or that there was a substantial risk of harm to them. Indeed, any concerns about Mother's ability or willingness to protect the children from Father were eliminated by the time of the jurisdictional hearing since she would have testified she did not intend to reunify with Father. We do not address Mother's contentions because her appeal is not justiciable.

"It is a fundamental principle of appellate practice that an appeal will not be entertained unless it presents a justiciable issue." (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1489 (*I.A.*).) An important requirement for justiciability is the availability of effective relief. (*Ibid.*) Such relief may not be available where jurisdiction is taken as a result of the both parents' conduct and only one parent challenges the ruling. This is because "[i]t is commonly said that the juvenile court takes jurisdiction over children, not parents." (*I.A., supra*, at p. 1491.) Thus, "a jurisdictional finding good against one parent is good against both. More accurately, the minor is a dependent if the actions of either parent bring [the minor] within one of the statutory definitions of a dependent. [Citations.]" (*In re Alysha S.* (1996) 51 Cal.App.4th 393, 397.)

"For this reason, an appellate court may decline to address the evidentiary support for any remaining jurisdictional findings." (*I.A., supra*, at p. 1492.) However, it may exercise its "discretion and reach the merits of a challenge to any jurisdictional finding

5

when the finding (1) serves as the basis for dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or (3) 'could have other consequences for [the appellant], beyond jurisdiction' [citation]." (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762-763 (*Drake M.*).)

In *I.A.*, the court concluded a father's appeal of a jurisdictional order was not justiciable because the jurisdictional findings were based on both parents' conduct. (*I.A., supra*, at pp. 1492-1493.) Thus, the juvenile court was entitled to assert jurisdiction over the child based on the unchallenged allegations against the mother. The appellate court could not render any relief to the father that would have a "practical, tangible impact on his position in the dependency proceeding." (*Id.* at p. 1492.)

Likewise, the juvenile court sustained counts against both Mother and Father in this matter. Father failed to appeal the juvenile court's order and Mother only challenges the sufficiency of the evidence as to her conduct, not Father's. Even if Mother were to prevail, the allegations regarding Father's conduct would continue to support dependency jurisdiction over D.W. and M.S. Her appeal is not justiciable.

Mother disagrees, relying on *Drake M., supra*, 211 Cal.App.4th at pages 762-763. In *Drake M.*, the father challenged a single jurisdictional finding against him involving his use of medical marijuana. The court exercised its discretion to review the father's appeal on the merits because the outcome of the appeal was the difference between the father being an offending parent versus a non-offending parent. There was no evidence to demonstrate the father was unable to care for his child due to substance abuse. His use of medical marijuana alone was not a sufficient basis on which to find jurisdiction. (*Id.* at pp. 764-767.) The jurisdictional finding as to father was therefore reversed. (*Id.* at p. 771.)

We decline to apply the reasoning in *Drake M.* to reach the merits of Mother's appeal. The father's situation in *Drake M.* is distinguishable from Mother's. In *Drake M.*, there was a single jurisdictional finding against the father, which by itself could not support jurisdiction over his child. In this case, the findings against Mother are sufficient

6

to support jurisdiction over M.S. and D.W., even without any findings against Father: she has a history of violent altercations with Father; she participated in an altercation on March 30, 2014, when she pushed Father; and she allowed Father, a registered sex offender with unaddressed anger management issues, unlimited access to the children.

While Mother asserts she may face negative consequences from the jurisdictional order, such as in a future custody order or potential loss of employment, these consequences appear to be highly speculative. (*In re C.C.* (2009) 172 Cal.App.4th 1481, 1489.) This is particularly true with respect to Mother's contention that a favorable outcome on appeal in this case could affect future family law proceedings that may arise between the parties. There is no indication that Father seeks custody of M.S.[4] Indeed, Father failed to reunify with his other children. Even if there were a family law proceeding in which Father sought custody of M.S., he was similarly found to be an offending parent in this case. Indeed, Father's status as a registered sex offender constitutes prima facie evidence that the minor is at substantial risk of abuse or neglect in future dependency actions. (§ 355.1, subd. (d).) Given these circumstances, it is unlikely any family law proceedings would be impacted by the juvenile court's adverse findings against Mother in this case.

---

**4** He would certainly have no standing to assert any claim over D.W. since he is not her father.

## DISPOSITION

The challenged jurisdictional order is affirmed.


BIGELOW, P.J.

We concur:


FLIER, J.


GRIMES, J.